UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA M. BUTLER,

               Plaintiff,                    Case No. 2:17-cv-10927

                                              District Judge George Caram Steeh

v.                                   Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 12), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 16) AND AFFIRM THE DECISION OF THE COMMISSIONER

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 12), **GRANT** Defendant's motion for summary judgment (DE 16),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Dana M. Butler, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for social security disability insurance

(DI) benefits. This matter is before the United States Magistrate Judge for a Report

and Recommendation on Plaintiff's motion for summary judgment (DE 12), the

Commissioner's cross-motion for summary judgment (DE 16), Plaintiff's reply brief (DE 17), the Commissioner's sur-reply brief (DE 18) and the administrative record (DE 9).

## A. Background

Plaintiff filed her application for DI benefits on February 27, 2014, alleging that she has been disabled since April 30, 2012.  (R. at 133-34.)  Plaintiff's application was denied on August 1, 2014, and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 97-100, 103-04.) ALJ Patrick J. MacLean held a hearing on December 8, 2015, at which Plaintiff was represented by counsel.  (R. at 34-80.) The ALJ considered all of the evidence and, on January 25, 2017, determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-29.)  On February 22, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1-6.)  Thus, ALJ MacLean's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on March 24, 2017.

## B. Plaintiff's Medical History

The administrative record contains approximately 429 pages of medical records (Exhibits 1F through 19F) spanning the period from April 30, 2012 (Plaintiff's alleged onset date and the date she presented to the hospital after a motor vehicle collision) through November 12, 2015, all of which were available

to the ALJ at the time of his January 25, 2016 decision.  The medical records include treatment notes and opinions from Plaintiffs' treating physicians, including Dr. David Jackson and Richard A. Caprio, Ph.D., physical therapy treatment notes, and consulting examiner opinions by Terrance Mills, Ph.D. and Elizabeth Edmond, M.D. (R. at 214-643), and the administrative record also contains State agency reviewing medical source opinions by Leonard Balunas, Ph.D. and B.D. Choi, M.D., dated July 30, 2014 and July 31, 2014, respectfully.  (R. at 88-92.) These records will be discussed in detail, as necessary, below.

### C.    Hearing Testimony

Plaintiff testified at the December 8, 2015 hearing before ALJ MacLean.  (R. at 38-72.)  Vocational expert Annette K. Holder also provided testimony. (R. at 72-79.)  The hearing testimony will be cited as necessary below.

### D.    The Administrative Decision

On January 25, 2016, ALJ MacLean issued an "unfavorable" decision. Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 30, 2012, the alleged onset date.  (R. at 17.)  At **Step 2**, the ALJ found that Plaintiff has the following severe impairments:  lumbar spine strain; right shoulder tendinitis; adjustment disorder; and reactive depression.  (R. at 17.)  At **Step 3**, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. at 17-19.)  Prior to **Step 4** of the sequential process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC")[1] to:

> perform sedentary work … except she can stand or walk for approximately two hours per eight-hour day and sit for approximately six hours per eight-hour workday with normal breaks; can lift or carry up to 10 pounds occasionally; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl; and frequently reach overhead with her right upper extremity; work is limited to simple, routine, and repetitive one or two step tasks; only a low stress job defined as having only occasional decision making and occasional changes in the work setting; and only occasional interaction with the public and interaction with coworkers.

(R. at 19-27.)  At **Step 4**, the ALJ found that Plaintiff is not capable of performing her past relevant work as a teacher and as a mail handler/clerk.  (R. at 27.) The ALJ proceeded to find at **Step 5** that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 28.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since April 30, 2012, the alleged onset date, through the date of the decision.  (R. at 28-29.)

### E.    Standard of Review

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability."  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.") (citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010)).  Finally, even if the ALJ's decision meets the

6

substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

In her motion for summary judgment, Plaintiff asserts essentially two claims of error.  First, she contends that the ALJ failed to properly weigh the opinions of her treating physicians as well as the consultative examiner.  Second, Plaintiff argues that the ALJ erred in assessing her credibility regarding the severity of her impairments.  (DE 12.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision.  (DE 16.)

### 1.    Treating Source Opinion Evidence

Plaintiff complains that the ALJ improperly gave little weight to the statements of her treating medical sources, Dr. Olin Lepand, Dr. David Jackson and Richard Caprio, Ph.D., and also that he gave little weight to the opinion of the consultative examiner, Dr. Terrance Mills. (DE 12 at 12.)  The Commissioner responds that the ALJ properly assessed the opinions contained in the record and established an RFC supported by substantial evidence.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 404.1527(b). The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Administrative law judges "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . .[,]" but "are not required to adopt any prior administrative medical findings[.]" 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

For claims filed before March 27, 2017, "the Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Martin v. Colvin*, 207 F.Supp.3d 782, 788 (S.D. Ohio 2016) (quoting *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013)). "In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers." *Id.*

Under the regulations, a treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see LaRiccia v. Comm'r of Soc. Sec.*, 549 F.

8

App'x 377, 384 (6th Cir. 2013).  The ALJ generally gives deference to the

opinions of a treating source "since these are likely to be the medical professionals

most able to provide a detailed, longitudinal picture of [a patient's] medical

impairment(s) and may bring a unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R.

§ 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir.

2009). To qualify as a treating source, the physician must have an "ongoing

treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's

opinion, the ALJ must meet certain procedural requirements.[2] *Wilson v. Comm'r of*

*Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give

a treating source's opinion controlling weight:

---

[2] An exception exists for treating source opinions on issues that are reserved to the
Commissioner, which "are never entitled to controlling weight or special
significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues
reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in
> severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past
> relevant work;
> 4. How the vocational factors of age, education, and work experience
> apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)). Nevertheless, the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimant's understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the

10

agency's decision is applied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45.

In essence, "opinions of a treating source … must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12 CV 3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if … the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id.*

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547); *see also, Betty v. Comm'r of Soc. Sec.,*

11

No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

For the reasons stated below, I find that the ALJ's opinion gives good reasons for the weight given to the medical opinions at issue and that the Commissioner has met the goal of § 1527(c). *See Francis*, 414 F. App'x at 805. I also find that the opinion ''permits the claimant and [this] reviewing court a clear understanding of the reasons for the weight given [to each] treating physician's opinion[.]'' *See id.* (quoting *Friend*, 375 F. App'x at 550).

### a. Dr. Olin Lepand

Olin Lepand, M.D., a doctor with POCS Mental Health and Medical Center, completed an undated Mental Residual Functional Capacity Questionnaire regarding Plaintiff, in which he indicated that Plaintiff had difficulty with memory, decreased energy, loss of interest, persistent anxiety, difficulty thinking and concentrating, emotional withdrawal or isolation, and recurrent intrusive recollections of a dramatic experience with marked distress. He further found that Plaintiff was limited to seriously limited in her ability to perform even unskilled work due to severe depression and back pain, and that she would miss more than four days of work per month. Dr. Lepand wrote that Plaintiff "has deep depression and [is] unable to function adequately in a work environment. Not able to drive since the [April 30, 2012 motor vehicle] accident due to chronic back pain." (R. at

563-67.)  The ALJ gave this opinion "little weight" because it is "based on Claimant's subjective complaints, conclusory with little explanation, and functional limitations appear to be sympathetic opinions."  (R. at 26.)  The ALJ further noted that there was a "gap in mental health treatment from October 23, 2014 to May 11, 2015" and that "there do not appear to be any records from Dr. Lepand personally in evidence."  (*Id.*)

Plaintiff broadly complains that the ALJ improperly gave this opinion "little weight."  However, in her motion, Plaintiff simply recites Dr. Lepand's findings, but does not otherwise address the ALJ's bases for affording Dr. Lepand's opinion little weight, or show how his findings in his undated report are supported by the record evidence or are entitled to more weight.  As this Court recently held regarding a similar motion for summary judgment in a Social Security case, Plaintiff's "almost complete lack of argument development renders the majority of his arguments waived. '[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'"  *Spiteri v. Colvin*, No. 14-14140, 2015 WL 7258749, at *3 (E.D. Mich. Nov. 9, 2015) (Stafford, M.J.) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997)) (footnote, citation and internal quotation marks omitted), *report and recommendation*

13

*adopted*, 2015 WL 8538036 (E.D. Mich. Dec. 11, 2015) (Michelson, J.). The

administrative record in this case is nearly 650 pages long, and the Court will not

search the record for potential arguments or evidence beneficial to Plaintiff.   *Jones*

*v. Comm'r of Soc. Sec.*, No. 3:12 CV 2986, 2013 WL 4748083, at *8 (N.D. Ohio

Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record

for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her

claims. This Court does not conduct a *de novo* review in social security

proceedings, and certainly cannot be expected to craft an argument on [Plaintiff's]

behalf.") (quotation marks and citations omitted).

      In any event, the ALJ's finding regarding Dr. Lepand is supported by

substantial evidence.  The ALJ correctly noted that there do not appear to be any

records from Dr. Lepand personally in the record and that every treatment record

from POCS indicates instead that Plaintiff was only "seen by" a physician's

assistant, Patricia St. Marie.  (R. at 26, citing R. at 614-29.)  Aside from noting that

the first POCS "contact" with Plaintiff was on July 14, 2014, Dr. Lepand did not

specifically refer to findings in these treatment notes, or any other exams, in his

opinion.  The ALJ further noted that the treatments records by Ms. St. Marie

showed "generally unremarkable mental status exams, which are wholly

contradictory of [Dr. Lepand's] opinion."  (R. at 23, 26.)  In addition, the ALJ

correctly noted that there is a gap in the POCS treatment records from October 22,

2014 through May 11, 2015.  (R. at 24, 26.)  While Plaintiff argues, correctly, that she did see Dr. Caprio during that time period, she does not contend that she was treated by Ms. St. Marie or anyone else *at POCS* during that time period.

Accordingly, Plaintiff has failed to demonstrate that the ALJ erred in his assessment of Dr. Lepand's opinion.

### b.  Richard Caprio, Ph.D.

On October 29, 2014, Richard Caprio, Ph.D., Plaintiff's treating psychologist, completed a Mental Residual Functional Capacity Questionnaire noting that Plaintiff had depression, anxiety, social withdrawal, panic attacks, and trouble multitasking and concentrating, with memory deficits.  He found that Plaintiff was limited to seriously limited in her ability to perform simple work activities, was unable to meet competitive standards in several areas (including making simple work-related decisions, working with others, or performing at a consistent pace without unreasonable rest periods), that she was completely unable to understand, remember, or carry out detailed instructions, or deal with stress in semiskilled work, and that she would miss more than four days of work per month. Dr. Caprio concluded that Plaintiff's "pain, fears, anxiety, depression and cognitive problems would make it impossible for her to function *in a classroom* at this time. In fact[,] these same problems now would preclude *most* any work responsibilities even in less demanding jobs." (R. at 573-77 (emphases added).)  As with Dr.

15

Lepand, the ALJ gave this opinion "little weight" because, with the exception of the Dr. Caprio's August 6, 2012 examination of Plaintiff, his opinion was based on Plaintiff's subjective complaints, was conclusory with little explanation, and the functional opinions appear to be sympathetic opinions. (R. at 26-27.)  In addition, findings of disability are reserved to the Commissioner, and are not given any specific significance.  20 C.F.R. § 404.1527(d)(3).

Plaintiff argues that that ALJ improperly discounted Dr. Caprio's opinion for "a gap in mental health treatment from October 23, 2014 to May 11, 2015," because, contrary to this statement, there was no gap in Dr. Caprio's treatment of her.  (DE 12 at 15.)  Plaintiff is correct that there was no gap in her mental health treatment with Dr. Caprio from October 2014 to May 2015.  Indeed, the ALJ recognized in his opinion that Plaintiff continued to treat with Dr. Caprio during this time period.  (R. at 21, 23.)  However, although the ALJ initially addressed the "treating source statements" by Dr. Lepand *and* Dr. Caprio together when assigning those opinions little weight, it appears that the remainder of the paragraph, including the statement regarding the gap in mental health treatment, is directed to the ALJ's analysis of Dr. Lepand's opinion only, and not Dr. Caprio's opinion, which is addressed in the following paragraph in the opinion.  (See R. at 26-27.)  Specifically, the ALJ noted the gap in mental health treatment and then noted that there do not appear to be any records *from Dr. Lepand* personally in

16

evidence.  As explained above, this statement is correct, as there was a gap in

Plaintiff's treatment with Dr. Lepand's practice at POCS during that time period.

(R. at 24, 26.)  Thus, the ALJ's qualified statement is accurate.  In any event,

reading the ALJ's decision as a whole, the statement regarding the gap in treatment

when discussing the opinion evidence of Dr. Lepand (with POCS) *and* Dr. Caprio

*together* appears, at most, to be more of a harmless misstatement than error

requiring remand, and in context just a poorly phrased observation. *See Vitale v.*

*Comm'r of Soc. Sec.*, No. 16-12654, 2017 WL 4296608, at *2 (E.D. Mich. Sept.

28, 2017) (recognizing need to read the ALJ's assessment of the physician opinion,

"together with the ALJ's decision as a whole") (citations omitted).

Plaintiff also faults the ALJ for discussing Plaintiff's Global Assessment

Functioning (GAF) score from the August 2012 examination "as being evidence

that claimant had a much higher level of functioning than would be indicated by

Dr. Caprio's assessment."  (DE 12 at 23, citing R. at 27.)  However, the ALJ also

expressly recognized in his decision that "this [GAF score] was shortly after

[Plaintiff's April 30, 2012 motor vehicle] accident and not necessarily her baseline

condition since that time."  (R. at 21.)  While an ALJ is not bound by GAF scores,

Plaintiff does not cite to any case law that an ALJ's consideration of a GAF score

constitutes reversible error.  Indeed, most social security plaintiffs appearing

before this Court suggest precisely the opposite: that GAF scores *must* be heeded

17

by the ALJ, particularly if they favor a finding of disability.  But the law of this Circuit occupies the middle ground: it is settled that while a GAF score may be of "considerable help," it is not "essential" to determining an individual's RFC. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (recognizing that the ALJ does not have to consider a GAF score in any particular manner); *DeBoard v. Comm'r of Soc. Sec.*, 211 F.  App'x 411 (6th Cir. 2006) ("A GAF score may help an ALJ assess mental RFC, but it is not raw medical data.").[3]

---

[3] Specifically, the Sixth Circuit held in *DeBoard*:

> The [Global Assessment Functioning] score is a subjective determination that represents 'the clinician's judgment of the individual's overall level of functioning. We have previously held that the failure to reference a Global Assessment Functioning score is not, standing alone, sufficient ground to reverse a disability determination. Moreover, the Commissioner has declined to endorse the [Global Assessment Functioning] score for use in the Social Security and [Supplemental Security Income] disability programs, and has indicated that [Global Assessment Functioning] scores have no direct correlation to the severity requirements of the mental disorders listings. Accordingly, we have affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower. *See, e.g., Smith v. Comm'r of Soc. Sec.,* No. 02–1653, 2003 WL 22025046, 74 Fed.Appx. 548 (6th Cir. Aug. 27, 2003) (Global Assessment Functioning score of 48); *Nierzwick v. Comm'r of Soc. Sec.,* 7 Fed.Appx. 358 (6th Cir.2001) (Global Assessment Functioning score of 35); *Thurman v. Apfel,* 211 F.3d 1270 (6th Cir.2000) (Global Assessment Functioning score of 50).

211 F. App'x at 415 (quotation marks and internal citations omitted).

Plaintiff does not otherwise argue that the ALJ erred in his assessment of Dr. Caprio's opinion.  Indeed, a review of the ALJ's opinion here demonstrates that he thoroughly reviewed and discussed Dr. Caprio's treatment of Plaintiff from August 2012 through June 2015, including Dr. Caprio's August 2012 exam of Plaintiff in which he conducted testing and diagnosed Plaintiff with cognitive changes due to medical condition, mild cognitive disorder not otherwise specified, and adjustment disorder with anxious and depressed mood with a GAF of 60.[4]  Dr. Caprio opined that Plaintiff could have a problem returning to work *as a teacher* at that time and that she should be re-evaluated in six to eight months.  (R. at 21, 23, citing R. at 296-304.)  The ALJ gave this report some weight because the opinions were consistent with the IQ testing and Plaintiff's performance on the exam, but also noted that Plaintiff's GAF score of 60 indicated adequate functioning ability that did not preclude work activity, and that because the testing was conducted shortly after the 2012 motor vehicle accident, it was not necessarily Plaintiff's baseline condition since that time.  (R. at 21.)  Moreover, the ALJ agreed with Plaintiff that she was unable to perform her past work as a teacher, or as a mail handler/clerk. (R. at 26.)

---

[4] A GAF score of 51-60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Kornecky*, 167 F. App'x at 503 (quoting *DSM-IV-TR* at 34 (capitalization and boldface omitted)).

The ALJ further acknowledged that Plaintiff <u>continued to treat with Dr. Caprio through June 2015</u>, and that she reported having anxiety, difficulty multitasking and problems with attention and distractibility, but that she was also reading and gardening, and that she had returned to driving as of October 2012. The ALJ noted however that these records did not appear to contain formal mental status exams or any objective findings regarding Plaintiff's mental condition, such as in the August 2012 examination, but merely a re-statement of Plaintiff's complaints.  (R. at 23, citing R. at 551-54, 586-605, 630-33.)  It is well-settled that a physician's statement that "merely regurgitates [a claimant's] self-described symptoms" is "not a medical opinion at all."  *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).  As the Sixth Circuit recently explained, "[r]egardless of the inherent subjectivity in the field of psychiatry, a doctor cannot simply report what his patient says and re-package it as an opinion."  *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 629-30 (6th Cir. 2016) (holding that an ALJ "properly discounted" the opinion of a treating physician "because it relied heavily on [the plaintiff's] self-reporting").

Thus, because the ALJ properly found that Dr. Caprio failed to provide a supported opinion consistent with the record evidence, the ALJ did not err in affording his opinion limited weight.

### c.  Dr. M. David Jackson

As the ALJ recognized in his opinion, Dr. M. David Jackson, with
Rehabilitation Physicians, treated Plaintiff for issues with her neck, shoulder and
back between May 2012 and November 2015. (R. at 21-25, citing R. at 514-50,
606-13, 634-43.) Dr. Jackson completed a Physical Residual Functional Capacity
Questionnaire in January 2015[5] in which he opined that Plaintiff could walk only
half a block without severe pain, sit for one hour, stand for 20 minutes at a time,
stand or walk less than two hours in an eight-hour workday and sit for about two
hours in an eight-hour workday, but would need to walk every 30 minutes for
about five minutes and would need to shift positions and take unscheduled breaks
every hour for 10 minutes. He found she should lift less than 10 pounds, could
rarely perform any postural activities, could use her bilateral upper extremities
only five to ten percent of the time, and would miss more than four days a month.
(R. at 578-85.)

The ALJ found that Dr. Jackson's opinion was entitled to little weight
because the opinion was based on Plaintiff's subjective complaints, was
inconsistent with the medical record, and was conclusory with little explanation.
Specifically, the ALJ explained that the objective medical evidence does not

---

[5] There are two questionnaires in the record signed by Dr. Jackson—one dated
January 8, 2015 and another dated January 20, 2015. (R. at 578-85.) It is not clear
why there are two reports dated so closely together, as these two questionnaires are
essentially identical except for Dr. Jackson's responses to questions 16 and 17.
(See R. at 581-85.)

support Dr. Jackson's opinion that Plaintiff would miss so much work, that she would have any significant restrictions with her left upper extremity, or that she would have such restrictions with postural activities, and that Dr. Jackson's treatment notes indicate that Plaintiff was doing some housework, driving and cooking.  (R. at 26.)

Plaintiff again simply recites Dr. Jackson's findings in the Physical Residual Functional Capacity Questionnaire he completed, but does not assert any specific issue with the ALJ's analysis of Dr. Jackson's opinion.  At best, Plaintiff only broadly asserts, following her recitation of Dr. Jackson's findings, that the ALJ "substituted his own 'medical expertise' in place of the trained medical professionals" and that "the record contains evidence of medical conditions that can reasonably be expected to give rise to the plaintiff's complaints of pain and psychiatric symptoms and limitations."  (DE 16 at 22.)[6]  As explained above, 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived, *McPherson,* 125 F.3d at 995–96, and "it is not the Court's function to search the administrative record for evidence

---

[6] Plaintiff also refers in passing to the physical consultative evaluation by Dr. E. Edmond, but fails to develop any argument regarding this opinion.  Plaintiff similarly summarizes the function report completed by Willa Butler, but fails to develop any argument that the ALJ erred in considering this evidence.  Any argument regarding these issues is thus waived.  *See McPherson*, 125 F.3d at 995-96.  In any event, a review of the ALJ's opinion shows that he gave Dr. Edmond's opinion great weight and thoroughly recited and considered the function report in reaching his findings.  (R. at 20, 25.)

to support [Plaintiff's] 'argument' or find law supporting [his or] her claims."
*Jones*, 2013 WL 4748083, at *8 (quotation marks and citations omitted).   In
reality, she is asking this Court to take another look and re-weigh this evidence in
her favor.  This, the Court cannot do. "Our task is not to reweigh the evidence.
That is solely the province of the Secretary." *Mullins v. Sec'y of Health & Human
Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) (citing *Wokojance v. Weinberger*, 513
F.2d 210 (6th Cir. 1975)).

In any event, review of the ALJ's opinion reveals that he comprehensively
reviewed Dr. Jackson's treatment notes regarding Plaintiff and noted that Plaintiff
had many complaints with regard to shoulder and back pain, headaches and
anxiety, but that objective examinations revealed that she could stand and ambulate
independently with mild antalgia, had mild tenderness to palpation, improving
symptoms, and had generally normal strength and improved cervical range of
motion.  (R. at 24-25.)  The ALJ thus properly found that "[t]he objective medical
evidence does not support that Claimant would miss so much work, that she would
have any significant restrictions with her left upper extremity, or that she would
have such restrictions with postural activities" and that "her treating notes indicate
that she was doing some housework driving and cooking, which would be
impossible with these restrictions."  (R. at 26.)

23

Accordingly, Plaintiff has failed to demonstrate that the ALJ erred in affording Dr. Jackson's opinion little weight. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (the ALJ is "not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation") (internal quotation marks omitted); *see also Buchanon v. Comm'r of Soc. Sec.*, No. 13-CV-14288, 2015 WL 927831, at *8 (E.D. Mich. Mar. 4, 2015) (ALJ properly assigned little weight to treating physician's ultimate conclusion as to the severity of plaintiff's limitations because "it was not supported by his own examination findings or by the record as a whole").

### d.  Terrance Mills, Ph.D.

Plaintiff was evaluated by consultative examiner and psychologist Terrance Mills, Ph.D. on July 15, 2014.  Dr. Mills found Plaintiff to have persistent depressive disorder, unspecified anxiety disorder, and neurocognitive disorder secondary to genetic brain injury with a guarded prognosis, with moderate impairments with her ability to understand, retain, and follow simple instructions, and to perform basic, routine, and tangible tasks.  (R. at 568-72.)  The ALJ gave this opinion little weight because testing supported only minimal limitations in activities of daily living and essentially intact social functioning.  Further, Plaintiff maintained a positive relationship with family and friends and got along well with coworkers, and she experienced only minor memory issues but had the ability and

24

memory to do calculations and serial sevens, and otherwise maintain

concentration, persistence and pace to perform at least simple work activities on a

routine basis.  (R. at 25.)

Plaintiff again simply recites Dr. Mill's report findings and her own

subjective complaints and then asserts that Dr. Mills's finding that Plaintiff was

moderately impaired in her ability to understand, retain and follow simple

instructions is contrary to the ALJ's finding that Plaintiff has the ability to perform

simple routine, repetitive low stress work. (DE 12 at 15-18.)  She further notes that

Dr. Mills does not defined what "moderately impaired" means, but that some

courts have interpreted a "moderate" limitation or problem to mean occurring 20%

of the time.  (*Id.*)  However, Plaintiff fails to cite any support for her contention

that the ALJ erred by not adopting Dr. Mills's "moderately impaired" limitation, so

the question of what "moderate" implies is academic.  Again as explained above,

issues adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived.  *McPherson,* 125 F.3d at 995–96;

*see also White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 850 (6th

Cir. 2010) ("perfunctory" and "nebulous" argument renders an issue forfeited);

*Davis v. Comm'r of Soc. Sec.*, 2016 WL 4445774, at *10 (E.D. Mich. July 29,

2016) (Patti, M.J.) ("[T]he Court has no affirmative duty to go through…with a

fine-toothed comb to verify consistency with the 379-page record, particularly

where Plaintiff has failed to use the adversarial process to point out any inconsistencies."), *report and recommendation adopted*, 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016) (Leitman, J.).

In any event, the ALJ thoroughly discussed Dr. Mills's examination and findings and determined that the examination did not support the extent of limitations opined by Dr. Mills because "her testing at that time revealed that she had only minimal limitation with activities of daily living, essentially intact social functioning, except that she was depressed, but maintaining the ability to get along with others, and some minor issues in memory, but overall adequate cognitive functioning to maintain concentration, persistence, and pace to perform at least simple work activities on a routine basis." (R. at 25.) Plaintiff has failed to specifically address these findings by the ALJ. Accordingly, Plaintiff's claim of error should be denied. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (an ALJ's finding that a medical opinion conflicts with other evidence in the record is sufficient to discount the opinion). Moreover, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*, 581 F.3d at 406 (internal citations omitted).

### 2. Credibility

#### a. Framework for the ALJ's evaluation

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008); *see also Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) ("The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly."). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. It is for this reason that the ALJ's credibility findings have at times been characterized as "unchallengeable." *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113-14 (6th Cir. 2010); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("A circuit court . . . may not review a determination of credibility. It is for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.") (alteration omitted). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id*.; *see also Kalmbach v.*

27

*Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.").

When assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011).  The ALJ made such a determination here, concluding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (R. at 21.)   Upon making that finding, the ALJ must next "consider the entire case record" to "evaluate the intensity, persistence, and functional limitations of the symptoms considering objective medical evidence."   20 C.F.R. § 404.1529(c)(1-3).  A non-exhaustive list of relevant factors to be considered by the ALJ include: (1) the claimant's daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; (6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and (7) other factors concerning functional limitations and restrictions. *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. §

28

404.1529(c)(1-3); *Ewing v. Astrue*, No. 1;10-cv-1792, 2011 WL 3843692, at \*9

(N.D. Ohio, Aug 12, 2011) ("Social Security Ruling 96-7p requires such factors to

be *considered*, not *discussed . . . .*")  (emphasis in original) (citing *Kornecky*, 167

F. App'x at 508), *report and recommendation adopted*, 2011 WL 3843703 (N.D.

Ohio Aug. 30, 2011).  The ALJ must "provide a sufficiently specific explanation

for his [or her] credibility determination so that it is clear to the individual and any

subsequent reviewers the weight given to the individual's statements and the

reasons for that weight." *Malcolm v. Comm'r of Soc. Sec.*, No. 13-15188, 2015

WL 1439711, at \*7 (E.D. Mich. Mar. 27, 2015) (citing *Soc. Sec. Rul.* 96-7p, 1996

WL 374186, at \*1 (July 2, 1997)).

### b.  The ALJ's credibility determination is supported by substantial evidence

Plaintiff argues that the ALJ's credibility finding is flawed.  However,

review of the ALJ's opinion reveals that he found Plaintiff "not fully credible"

because her "alleged impairments are not fully supported by the medical records,

and her actual activities of daily living are inconsistent with her complaints."  ALJ

MacLean went on to observe that "[h]er required treatment has been routine and

conservative, and her prescribed treatment and medications have resolved or

improved her condition" and "she had in frequent [sic] treatment or gaps in

treatment with regard to her mental condition from October 24, 2014 until May 11,

2015."  (R. at 27.)

First, Plaintiff cites excerpts of the medical record in support of the credibility of her complaints of pain. However, as the Commissioner properly notes, Plaintiff's argument merely restates the complaints she made to her doctors or during the hearing, without providing objective evidentiary support for the severity alleged. The ALJ conducted a comprehensive review of the record evidence in this case, acknowledged that Plaintiff experienced pain and functional limitations after her April 2012 motor vehicle accident, but supportably found that the medical records demonstrated that her condition had improved with treatment and medication over time. (R. at 21-25.)

Second, Plaintiff argues that the ALJ improperly discounted her testimony about not wanting to be in groups or crowds because she, in fact, attended "group therapy." However, Plaintiff ignores that the ALJ also noted that Plaintiff reported that she gets along well with family, friends and coworkers, goes grocery shopping, and had no trouble interacting with the consultative examiners, *in addition to* properly acknowledging that Plaintiff consistently attended group therapy. (R. at 20.) Similarly, Plaintiff has failed to demonstrate how the ALJ erred by properly noting that Plaintiff had long-time friends and uses Facebook.

Third, Plaintiff claims that the ALJ erred by citing her daily activities, including cooking and cleaning, as evidence of a lack of credibility. (DE 12 at 26-28.) However, the ALJ properly considered Plaintiff's daily activities in

discounting her credibility, including that Plaintiff could perform personal care and some housework, such as cooking and housecleaning, but that her reports had been "somewhat inconsistent with regard to what housework or shopping she was able to perform." (R. at 18, 20, 27.) Plaintiff argues that an individual's ability to perform simple functions such as driving, grocery shopping, dish washing and floor sweeping does not necessarily indicate an ability to perform substantial gainful activity. (DE 12 at 28.) That is a fair point; however, as the Commissioner correctly notes, the ALJ here did not rely solely on Plaintiff's ability to perform daily activities when assessing the credibility of her allegations. (R. at 27.) And, as this Court has explained previously, the consideration of daily activities is not only appropriate, but required, when assessing a claimant's credibility. *See Emmons v. Comm'r of Soc. Sec.*, No. 2:12-cv-15235, 2013 WL 8178662, at *9 (E.D. Mich. Nov. 18, 2013) (noting that the Sixth Circuit only stated that "minimal daily functions are not comparable to typical work activities") (citations omitted), *report and recommendation adopted*, 2014 WL 1304938 (E.D. Mich. Mar. 31, 2014).

In any case, the ALJ's reasons for his credibility findings, as listed above, are clear to this subsequent reviewer and should have been equally clear to Plaintiff. "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247.

Contrary to Plaintiff's suggestion that the ALJ's credibility assessment was not

"based upon the record in its entirety" (DE 12 at 24), a review of the ALJ's

decision reveals that he thoroughly reviewed: Plaintiff's testimony; the record

evidence; and the opinion evidence from Plaintiff's treating doctors and the

consultative examining doctors. Plaintiff has failed to demonstrate that the ALJ's

credibility determination is flawed, and I find that the ALJ's credibility

determination is supported by substantial evidence.

### G.   Conclusion

Accordingly, the Undersigned **RECOMMENDS** that the Court **DENY**

Plaintiff's motion for summary judgment (DE 12), **GRANT**  Defendant's motion

for summary judgment (DE 16), and **AFFIRM** the Commissioner's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 6, 2018          s/Anthony P. Patti
                               Anthony P. Patti
                               UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on August 6, 2018, electronically and/or by U.S. Mail.

                               s/Michael Williams
                               Case Manager for the
                               Honorable Anthony P. Patti